IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


**HORACE BROWN, JR.,**

    **Plaintiff,**

vs.                                                  Case No. 4:05cv497-RH/WCS

**SECRETARY OF THE FLORIDA**
**DEPARTMENT OF CORRECTIONS,**

    **Defendant.**

_____/


### REPORT AND RECOMMENDATION

Pending is Defendant's motion for summary judgment, doc. 63, supported by a separate statement of facts, doc. 64, both filed on June 30, 2008. Plaintiff was advised of his obligation to respond under Rule 56, doc. 65, and has had an extended period of time to file his opposition. *See* docs. 65, 75. The December 4, 2008, deadline has expired without a response from Plaintiff.

Prior to ruling on the motion, it is noted that nothing has been received from the *pro se* Plaintiff since he submitted his response to Defendant's request for production, doc. 71, and his answers to Defendant's Interrogatories and second request for production, doc. 72. Those documents were submitted on September 2, 2008, after Plaintiff was ordered to respond to the discovery requests and Defendant's motion to

compel was granted.  Doc. 66.  Plaintiff had also been ordered to explain "why he failed to meet" two conditions agreed upon with Defendant's counsel.  Docs. 59, 66.  When Plaintiff's first response, doc. 60, was insufficient, he was ordered *again* to provide the explanation as to why he did not communicate with opposing counsel and why he failed to comply with the initial scheduling order.  Doc. 66.  Plaintiff filed an appeal of that order, doc. 70, which was upheld, doc. 74, but he failed to respond to the order.  There is also no indication in this record that Plaintiff complied with the third and fourth requirements of the order, doc. 66, granting Defendant's motion to compel, doc. 56.  Plaintiff was to submit $60 payment to Defendant by August 1, 2008, to reimburse Defendant for the court reporter's cancellation fee when Plaintiff cancelled the deposition.  Doc. 66, p. 5.  Plaintiff was further required to pay $300 as reasonable expenses for the Defendant in having to litigate the motion to compel.  *Id.*  Plaintiff was cautioned that failing to comply with the order would result in additional sanctions.  Doc. 66.

As noted above, Plaintiff's appeal of that order, doc. 70, was overruled and the order upheld.  Doc. 74.  After the appeal, the parties were given until December 5, 2008, to advise as to the status of this case.  Doc. 75.  In particular, the parties were to advise whether Plaintiff complied with all four requirements of the July 17, 2008, order.  *Id.*  No response to that order, doc. 75, was filed by either party.  Thus, despite Plaintiff's failure to comply, additional sanctions will not be entered as it appears Defendant that does not wish to pursue this issue.

**Plaintiff's third amended complaint, doc. 48**

Plaintiff alleges that he suffered a work related injury on February 11, 2003.  Doc. 48, p. 4.  He asserts that Defendant terminated Plaintiff's employed and discriminated against Plaintiff on the basis of his disability.  Id., at 3.  Plaintiff claims that Defendant failed to accommodate Plaintiff's disability and that he was terminated because he could not perform his job.  Id., at 4.  Plaintiff contends other positions were "available but Defendant failed to accommodate [his] disability and ultimately terminated [his] employment."  Id., at 5.

**Motion for Summary Judgment, doc. 63**

Defendant's motion for summary judgment, doc. 63, filed on June 30, 2008, seeks summary judgment on the grounds that Plaintiff cannot show he was a qualified individual with a disability, Plaintiff did not receive disparate treatment, there are legitimate nondiscriminatory reasons for Defendant's actions, Plaintiff has no evidence of pretext, and Plaintiff has no evidence that Defendant was motivated by Plaintiff's alleged disabilities.  Doc. 63.

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If accomplished, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  Id.  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).

Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party.  Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

Local Rule 56.1(A) provides that a motion for summary judgment "shall be accompanied by a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried."  The Local Rule also provides that the statement "shall reference the appropriate deposition, affidavit, interrogatory, admission, or other source of the relied upon material fact, by page,

paragraph, number, or other detail sufficient to permit the court to readily locate and check the source."  The Local Rule provides that the party opposing the motion shall serve a similar statement of material facts as to which the party contends there is a genuine issue to be tried, using the same format.  The Rule also provides that the movant's properly filed statement of undisputed facts will be deemed to be admitted unless controverted by the opposing party in the manner specified by the Rule.  As Plaintiff has not filed any opposition to the motion, all material facts set forth in Defendant's statement are deemed admitted, where supported by record evidence.

**The relevant Rule 56(e) evidence**

Plaintiff began his employment as a correctional officer with the Florida Department of Corrections on October 24, 1997.  Doc. 64, p. 1; Brown deposition, doc. 67 (hereinafter "Brown depo."), p. 10 (doc. 67-3, p. 9).[1]  Plaintiff worked at Hamilton Correctional Institution during his employment with the Department.  Doc. 64, p. 1 (Brown depo, p. 11) (doc. 67-3, p. 10).  Plaintiff had various duties as a correctional officer, serving as a dormitory officer or perimeter officer, and his duties varied from day to day.  Doc. 64, pp. 1-2; Brown depo, p. 11 (doc. 67-3, p. 10).

The Department has established a list of "essential functions for correctional officer."  Doc. 64, p. 2, *see* exhibit A (doc. 63-2).  An officer must be able to "[s]it, walk

---

[1] References to exhibits are first to the paper copy as filed and page number, followed by a reference (in parenthesis) to the corresponding document and page assigned by the electronic docket.  The docket numbers and page numbers on the electronic docket are only visible at the top of the document when the document is viewed on a computer.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.  Finally, the paper copy of Plaintiff's depositions has two sets of page numbers.  Citations here to the paper copy of the deposition are to the page numbers on the right hand side of the page (which do not correspond to the pages as filed) rather than to the page number at the bottom.

and stand for prolonged periods of time; stoop, squat, kneel, bend, run and lift approximately 50 pounds on a routine basis." Exhibit A (doc. 63-2). Plaintiff acknowledges that a correctional officer is "always walking" and it is an essential part of the job. Brown depo, p. 12 (doc. 67-3, p. 11).

On February 11, 2003, Plaintiff fell while working and injured his right knee. Doc. 64, p. 2 (Brown depo, pp. 18-20); Ex. D (doc. 68, p. 11). Plaintiff did not work as a correctional officer from February, 2003, until his employment was terminated on September 24, 2003. Doc. 64, pp. 2, 7; Ex. K (doc. 63-2, p. 6); Ex. K2 (doc. 68, p. 45). Plaintiff did, however, begin working alternate duty in the mailroom at Hamilton Correctional Institution in July, 2003. Doc. 64, p. 4; Brown depo, p. 40. Pursuant to the Department's policies and procedures concerning alternate duty, Procedure 208.010, an employee may be assigned "alternate duty" when the employee has "sustained a job-connected illness or injury and, who, while s/he is unable to perform the essential function of her/his position, can perform some type of work beneficial to the department." Doc. 64, p. 4; Ex. E (doc. 68, p. 13). Plaintiff worked in alternate duty "for approximately three weeks . . . until he reached MMI" [Maximum Medical Improvement]. Doc. 64, p. 4; Brown depo, pp. 40-41. Procedure 208.006 states that "[i]n no event will the employee be allowed to continue to perform alternate duties once the maximum medical improvement has been determined by the Division of Risk Management." Doc. 64, p. 4; Ex. E (doc. 68, p. 17).

Following the injury, Plaintiff was under the care of Dr. Aguerro. Doc. 64, p. 3; (Brown depo, p. 22). Dr. Aguerro ordered a Functional Capacity Evaluation of Plaintiff which was conducted on July 21, 2003. Doc. 64, p. 3; (Brown depo, pp. 24, 29); *see*

*also* Ex. K (doc. 63-2, p. 5). In the evaluation, Plaintiff could not stand or walk for extended periods of time, and could not crouch or squat. Doc. 64, p. 3; Brown depo, p. 31; Ex. C (doc. 68, pp. 6-8). Plaintiff was only able to walk just under 10 minutes of the 15 minute walk test. Ex. C (doc. 68, p. 7). Thus, the evaluation report indicates Plaintiff could walk only short distances of 1/4 mile or less. *Id.* Additionally, Plaintiff could not perform the necessary lifting and carrying portions of the evaluation. Ex. C (doc. 68, p. 8). Plaintiff agreed in his deposition that the evaluation was an accurate reflection of his abilities, at least at that time. Plaintiff's depo, p. 31 (doc. 67-3, p. 28).

The following month, Dr. Augerro prepared a Maximum Medical Improvement Determination Certification form, an evaluation of Plaintiff's physical condition. Doc. 64, p. 3; Ex. D. Dr. Augerro noted that 75 percent of the impairment to Plaintiff's right knee was already present at the time of injury; thus, only 25 percent of the impairment was due to injury. *Id.* Dr. Augerro concluded that as of July 30, 2003, Plaintiff had reached his maximum medical improvement (MMI) and could return to work, but with restrictions. Doc. 64, p. 3; Ex. D (doc. 68, p. 11). The restrictions would prevent Plaintiff from performing the essential duties of a correctional officer. Ex. K (doc. 63-2, p. 5). The duties of a correctional officer are in the "medium strength" category and the evaluation placed Plaintiff only in the "light strength category of physical demands." Doc. 64, p. 4; Ex. C (doc. 68, p. 6).

Plaintiff acknowledged that at the time of his termination, he could not kneel, had difficulty stooping, running, and squatting. Doc. 64, p. 2; Brown depo, p. 14 (doc. 67-3, p. 13). Plaintiff stated in his deposition that he could not perform those duties until his knee fully recovered. Doc. 64, p. 2; Brown depo, p. 16 (doc. 67-3, p. 15). Plaintiff also

acknowledged in his deposition that, according to Procedure 208.006, he could not continue to work alternate duty in the mailroom after reaching his MMI. Doc. 64, p. 4; Brown depo, p. 44 (doc. 67-3, p. 40).

The Department sent Plaintiff a certified letter, dated August 29, 2003, that personnel action was being taken that "could result in Plaintiff's dismissal . . . ." Doc. 64, p. 4; Ex. K2 (doc. 68, p. 45). The letter advised that the action was being taken because Plaintiff could not perform his assigned duties as a Correctional Officer. Doc. 64, pp. 4-5; Ex. G (doc. 68, pp. 28-29); Ex K2 (doc. 68, p. 45). The letter provides an employee with the opportunity to request a conference "to refute or explain the Department's assertion that you are unable to perform the duties of a correctional Officer and to demonstrate how you would be able to perform the essential functions of your job with or without accommodation." Ex. G (doc. 68, p. 29). In response, Plaintiff requested a Predetermination Conference "to refute the Department's position that [he was] unable to perform the duties of a Correctional Officer." Doc. 64, p. 5; Brown depo, ex. I (doc. 68, p. 38). A representative from the Florida Police Benevolent Association, Inc., also requested the Conference for Plaintiff. Doc. 64, p. 5; Ex. J (doc. 68, p. 39). The August 29th certified letter to Plaintiff also provided Plaintiff with a list of job vacancies and directed Plaintiff to review the list and provide the Department "with an oral or written statement, within the time permitted to request a predetermination conference, of your interest in a position for which you are otherwise qualified." Doc. 64, p. 6; Ex. G (doc. 68, p. 28); Ex. H (doc. 68, pp. 30-37).

Plaintiff did not provide a statement identifying a job on the list. At Plaintiff's deposition, he was asked whether he advised anyone at the Department that he had

found a job from the list provided to him that interested him. Brown, depo, p. 52 (doc. 67-3, p. 47). Plaintiff stated: "I did not say I found a job on this list, but I told them they do have other jobs that I would be interested in." Doc. 64, p. 6; Brown depo, p. 52 (doc. 67-3, p. 47). Plaintiff did not know whether the jobs he was interested in were actually vacant at the time and available. Doc. 64, p. 6; Brown depo, p. 52 (doc. 67-3, p. 47).

Plaintiff arrived at the Predetermination Conference, held on September 24, 2003, with a cane. Doc. 64, p. 2; Ex. K (doc. 63-2, p. 5). Plaintiff acknowledged that he had not told anyone that he could perform the duties of correctional officer because he did not think he could "be out there with a cane." Doc. 64, pp. 2-3; Brown depo, p. 16. When asked whether Plaintiff thought he was in a position to come back to work, Plaintiff replied that he thought "with time" his knee would get better. Ex. K (doc. 63-2, p. 6). At that conference, Plaintiff "never asked for an accommodation." Ex. A, Ratliff affidavit (Doc. 63-2, p. 2); *see also* Brown depo, pp. 67-72 (doc. 67-3, pp. 60-65). In Plaintiff's deposition, he disputes this point and contends that he did ask to work either in the control room or as a Perimeter Officer. Brown depo, pp. 52-32 (doc. 67-3, pp. 47-48). Even so, if Plaintiff had asked to be accommodated by being assigned as a Control Room Officer or Perimeter Officer, Plaintiff still would "be expected to perform all of the essential functions of Correctional Officers . . . ." Ex. A, Ratliff affidavit (Doc. 63-2, pp. 2-3). Indeed, Plaintiff recognizes that working as a Control Room Officer or Perimeter Officer were job assignments that were performed by all Correctional Officers. Doc. 64, p. 6; Brown depo, p. 52 (doc. 67-3, pp. 47-48). All correctional officers are rotated through several different assignments and Plaintiff would still be required "to work in all Correctional Officer assigned areas." Ex. A, Ratliff affidavit (Doc.

63-2, p. 3).  "Allowing an officer to stay in one position indefinitely would place a strain on the workforce and cause officers to become stagnant in their jobs."  *Id.*

Pursuant to Procedure 208.010, after a treating physician provides an employee's MMI, the employee will be reassigned to the duties of his regular position "unless the employee cannot perform the essential functions of that position."  Doc. 64, pp. 3-4; Ex. E (doc. 68, pp. 13-18).  When an employee has medication restrictions that prevent him from performing his job and the Department is unable to find suitable employment elsewhere that "meet the employee's medical restrictions," the Department must either (1) request the employee's resignation or (2) terminate the employee "based on inability to perform essential functions of the position."  Doc. 64, p. 7; Ex. F (doc. 68, p. 27).  Thus, following the Predetermination Conference, the Department sent Plaintiff a certified letter dated September 24, 2003, dismissing Plaintiff from his job as a Correctional Officer.  Doc. 64, p. 7; Ex. K2 (doc. 68, pp. 45-46).  Plaintiff was informed that his termination was due to his inability to perform the essential functions of a Correctional Officer.  *Id.*

Plaintiff appealed his dismissal, but the Public Employee Relations Commission upheld the Department's action.  Doc. 64, p. 7; Brown depo, p. 76.  Plaintiff then filed a charge with the Florida Commission on Human Relations on May 24, 2004, alleging "there were other positions available but [the Department] failed to accommodate [his] disability and ultimately terminated" his employment.  Doc. 64, p. 7; Brown depo, p. 78 (doc. 67-3, p. 71); Ex. L (doc. 68, p. 47).  On October 5, 2004, the Commission "found that no reasonable cause existed to believe that Plaintiff had been discriminated against."  Doc. 64, p. 7; Ex. M (doc. 68, p. 48).

In his deposition, Plaintiff identified two other persons whom he claimed were given accommodations and treated more favorably than he was by the Department. Doc. 64, p. 8; Brown depo, pp. 99-100 (doc. 67-3, pp. 90-91). Sergeant Amerson is diabetic and was allowed to bring his insulin with him, and he would take an "insult shot or whatever, and [keep] going." Brown depo, pp. 99-100 (doc. 67-3, pp. 90-91). Sergeant Amerson continued to do his job as a sergeant. Brown depo, p. 100 (doc. 67-3, p. 91). Plaintiff also identified Sergeant Philman, who Plaintiff said weighed about 500 pounds, and suffered from asthma and bronchitis. Brown depo, pp. 101-102 (doc. 67-3, pp. 91-92). Plaintiff said that Sergeant Philman, and several other unidentified officers, were "seriously obese" and could "hardly make it to the dormitory." Brown depo, p. 101 (doc. 67-3, p. 92). Plaintiff did not indicate he had knee problems, just "a lot of problems." Brown depo, pp. 101-102 (doc. 67-3, p. 92). Plaintiff testified in the deposition that those persons continued to work as correctional officers. *Id.*

During his deposition, Plaintiff was asked about his employment since being dismissed from the Department of Corrections. Brown depo, pp. 96-99 (doc. 67-3, pp. 87-90). Plaintiff stated that he applied with Postal Service, but was not hired. Brown depo, p. 97 (doc. 67-3, p. 88). Plaintiff also applied for a position with the Valdosta Police Department, but was not hired. *Id.* Plaintiff has been a pastor at a church for seven years and, during the time he worked for the Department of Corrections, his salary (offerings) from the church was approximately $300 per month. Brown depo, p. 98 (doc. 67-3, p. 89). At the time of the deposition, Plaintiff was earning around $500 a month as pastor. *Id.*

Plaintiff was also asked about his physical limitations. Brown depo, p. 104 (doc. 67-3, p. 94). Plaintiff said he could not run a mile after he was injured, but was getting better at the time of his termination. Brown depo, p. 104 (doc. 67-3, pp. 94-95). Plaintiff considered himself physically able to have worked. Brown depo, pp. 104-106 (doc. 67-3, pp. 94-96). Plaintiff reported that he could walk, sit, stand, stoop, and squat. Brown depo, p. 14 (doc. 67-3, pp. 12-13). He admitted having trouble "bending [his] knees for a long period of time" and kneeling and his ability to run "was improving." Brown depo, p. 14 (doc. 67-3, p. 13). When asked if Plaintiff was able to work now, Plaintiff answered, "I believe that I could do substantial work." Brown depo, p. 98 (doc. 67-3, p. 88).

**Analysis**

The Americans with Disabilities Act (hereinafter "ADA") prohibits covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112(a) (2000). It is not disputed that the Department of Corrections is a covered employer. To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) he has, had, or was perceived to have, a "disability"; (2) he was a "qualified" individual ("meaning he could perform the essential functions of the job in question with or without reasonable accommodations"); and (3) he was discriminated against because of his disability. Williams v. Motorola, Inc., 303 F.3d 1284, 1290 (11th Cir. 2002); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255 (11th Cir. 2001); *see also* Reed v. Heil Co., 206 F.3d 1055, 1061 (11th Cir. 2000). Defendant contends

Plaintiff cannot show he was disabled, or that he was a "qualified individual," or that Defendant discriminated against him.  Doc. 63, pp. 3-4.

The first element in a *prima facie* case of disability discrimination is showing that Plaintiff has a "disability" as defined by the ADA.  Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1215-16 (11th Cir. 2004), *cited in* McGuire v. Miami-Dade County, 418 F.Supp.2d 1354, 1363 (S.D. Fla., 2006).  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2); Carruthers, 357 F.3d at 1215-16.  Thus, a plaintiff's impairment must rise to the level of a disability, Carruthers, 357 F.3d at 1215-16, and it must be substantially limiting.  McGuire, 418 F.Supp.2d at 1363-64.

Here, there is no evidence to show Plaintiff was substantially limited in any major life activity.  The evidence presented shows that Plaintiff had some limitations in his ability to walk, run, squat, or kneel.  However, those limitations were not substantial, but mild.  Indeed, Dr. Augerro concluded that as of July 30, 2003, Plaintiff could return to work, but with restrictions.  The restrictions placed Plaintiff in a "light strength category," yet the duties of a correctional officer are in the "medium strength" category.  The medical record for Plaintiff, which was provided to the Department of Corrections, set limitations for Plaintiff's work.  Those limitations would prevent Plaintiff from performing the essential duties of a correctional officer.

The limitations for Plaintiff are not substantial.  Plaintiff contends in his deposition that he is capable of working, and that his condition was improving.  Plaintiff was working as a pastor, and had applied for another physically demanding job (as a police

officer). Plaintiff has not come forward with any evidence to show that he was or is disabled as defined by the ADA.

Moreover, if a plaintiff fails to show he is "disabled" under the ADA, then the employer is not required to accommodate him. *See* Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (employers must provide a reasonable accommodation only for employees with known disabilities). Thus, the Department of Corrections was not required to provide an accommodation for Plaintiff.

Additionally, Plaintiff has failed to meet his burden of identifying an accommodation that would allow him "to perform the essential functions of" a correctional officer. *See* Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997); Earl v. Mervyns, Inc., 207 F.3d 1361 (11th Cir. 2000). The law is clear that "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job." Holbrook v. City of Alpharetta, 112 F.3d 1522, 1528 (11th Cir. 1997); Earl, 207 F.3d at 1367. Here, there is no evidence that Plaintiff requested an accommodation. Furthermore, there is no evidence that Plaintiff was even aware of an accommodation that existed because Plaintiff's only suggestion was to have the Department alter the functions of the job and not require Plaintiff to rotate duties. An employer is not required to restructure the essential duties of a job.

The second element is that Plaintiff must demonstrate he was a "qualified" individual. A "qualified individual with a disability" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the job he held. 42 U.S.C. § 12111(8); Davis v. Fla. Power & Light Co., 205 F.3d 1301,

1305 (11th Cir. 2000).  The medical evidence in this case shows that Plaintiff was only able to perform the "light strength category" tasks and not the medium strength category that is required for correctional officers.  Plaintiff has not come forward with any evidence to show that he was qualified (physically able) to perform the medium work requirements of a correctional officer.  The job is physically demanding and an officer must be able to meet those demands to protect the lives of other correctional officers and inmates.  Plaintiff has not provided any evidence to show he was qualified.

Because Plaintiff has failed to meet the first two requirements to present a *prima facie* case, there is no need to consider further whether the Department discriminated against Plaintiff.  Having failed to show that Plaintiff was disabled, it cannot be shown that Plaintiff was discriminated against because of that disability.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion for summary judgment, doc. 64, be **GRANTED** and judgment entered in Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on January 30, 2009.

s/   William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**